Newman, J.
The petitioner was indicted under Section 12672, General Code, charged with the illegal sale of cocaine, the offense having been committed on March 9, 1911. He entered a plea of guilty and was sentenced indeterminately to a term of from one to five years in the penitentiary under the provisions of what is known as the old indeterminate-sentence law, Section 7388-6, Revised Statutes, and under this sentence he is now confined in the penitentiary.
Section 12672, as amended April 21, 1910, reads as follows: “Whoever sells, barters, furnishes or gives away any quantity of cocaine, alpha or beta eucaine or alypin, or any of their salts or compounds, or any preparation or mixture containing any of the aforesaid drugs or their salts or compounds of any of the combinations, of the same, * * * shall be fined not less than fifty dollars, nor more than five hundred dollars, for the first offense, and for each subsequent offense shall be imprisoned not less than one year nor more than five years in the penitentiary.”
The petitioner had been convicted and punished for an illegal sale of cocaine made on May 19, 1909.. The statute under which he was then convicted did not contain the following language which appears in the amended statute: “for th§ *319 first offense, and for each subsequent offense shall be imprisoned not less than one year nor more than five years in the penitentiary.”
The provisions of the statute under which petitioner was first convicted were substantially reenacted in the amended statute. In the latter the sale of additional drugs named therein is made criminal, the sale of cocaine, however, being prohibited both before and after the amendment. The principal difference is the provision for punishment of subsequent offenses by imprisonment in the penitentiary.
One of the grounds upon which petitioner predicates his right to a writ of habeas corpus is that the offense for which he is now serving sentence was his first offense under the amended statute, and he should therefore have been sentenced as a first offender notwithstanding'his prior conviction under the statute before its amendment.
If the amendment to the statute abrogates and repeals the original law as to those parts which have not been altered in the amending act, then his contention is well founded, but not so if the amendment is simply a continuance thereof in so far as the language of both are identical or substantially so.
By the act of April 21, 1910; when this statute was amended, the original statute was repealed. This was done under the requirements of Section 16 of Article II of the Constitution as follows: “No law shall be revived, or amended unless the new act contains the entire act revived, or the sec *320 tion or sections amended, and the section or sections so amended shall be repealed.”
As was said in State, ex rel. Durr, v. Speigel, ante, 19, in reference to this constitutional provision: “The obvious purpose of this provision of the constitution was to avoid the confusion caused by the distribution of different parts of the same section in different enactments; but there was no intention to change the operation of the original section as to provisions which are not changed.”
In Eli et al. v. Holton, 15 N. Y., 595, it is held that the effect of the amendment of a statute made by enacting that the statute “is amended, so as to read as follows,” and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute which are merely kept without change are to be considered as having been repealed and again reenacted, nor that the new provisions or changed portion should be deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become the law only at and subsequent to the passage of the amendment. To the same effect is the holding in Moore v. Mausert et al., 49 N. Y., 332.
“When a statute amends a former statute ‘so as to read as follows;’ it operates as a repeal by implication of inconsistent provisions in the former law and of provisions therein omitted in the latter. *321 When the amendatory act reenacts provisions in the former law, either ipsissimis verbis or by the use of equivalent though different words, the law will be regarded as having been continuous, and the new enactment, as to such parts, will not operate as a repeal, so as to affect a duty accrued under the prior law, although, as to all new transactions, the later law will be referred to as the ground of obligation.” In the Matter of the Estate of Prime, 136 N: Y., 347.
In these New York cases it does not appear that in the amendatory statute there was an express repeal of an existing statute as there was in the statute in the case at bar, but the intention manifested in each instance by the legislature is the same. As is stated in Sutherland on Statutory Construction (2 ed.), section 238, where there is an express repeal of an existing statute and a reenactment. of a portion of it, the reenactment neutralizes the repeal so far as the old law is continued in force. The intention manifested is the same as in an amendment enacted in the form “amended so as to read as follows,” and where there is no express repeal. This author, in section 237, lays down the rule that the provisions of the amended sections which are merely kept without change are not to be considered as repealed and again reenacted but to have been the law all along.
In State, ex rel. Durr, v. Speigel, ante, 22, it is said: “The presumption is that when the legisla *322 ture adopts an amendment it intends to make some change in the statute amended, and when it reenacts the original statute as amended it has then made the only change it desires to make, leaving the rest of the provisions undisturbed.”
This seems to be the general rule of statutory construction, and, applying it here, the provision of the statute making it an offense to sell, cocaine otherwise than as pointed out by the statute was continued in force and was undisturbed by the amendment, the conviction of Allen for the offense committed March -11, 1911, was a second conviction under the statute and the provision for the punishment of subsequent offenses applied.
This statute was amended prior to the commission of the second offense. It does not provide additional punishment for an' offense committed before its passage nor does it in any way affect previous crimes. It is applicable to crimes committed after its passage only, and affects all persons similarly situated.
In Blackburn v. State, 50 Ohio St., 428, the court had before it what was known as the habitual-criminal act (82 O. L., 237), which imposed life imprisonment upon one who had been previously twice convicted, etc. It was held that that statute in its operation did not conflict with Section 10 of Article I of the Constitution of the United States prohibiting ex post facto laws, nor with Section 28, Article II of the Constitution of this state, prohibiting retroactive laws, although one or both of the previous felonies charged against the accused *323 had been committed and the imprisonment on account thereof inflicted before the statute in question was enacted.
What was said by the court in that case is pertinent here: “A law cannot properly be considered retroactive when it apprises one who has established, by previous unlawful acts, a criminal character, that if he perpetrates further crimes, the penalty denounced by the law will be heavier than upon one less hardened in crime. In such case the party is informed before he commits the subsequent offense of the full measure of the liability he will incur by its perpetration, and therefore does not fall within the class that is entitled to the protection afforded by the constitutional guaranty ag'ainst the enactment of ex post facto, or retroactive laws, for the object sought by those guaranties, in respect to this kind of legislation, is that no transgressor of a penal statute, shall be subjected by subsequent legislation, to any penalty, liability or consequence, that was not attached to the transgression when it occurred.”
Judge Cooley, in his work on Constitutional Limitations (7 ed.), page 382, says: “And a law is not objectionable as ex post facto which, in providing for the punishment of future offenses, authorizes the offender’s conduct in the past to be taken into account, and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first; and it has not been deemed objectionable that, in providing for such *324 heavier penalties, the prior conviction authorized to be taken into the account may have taken place before the law was passed. In such case, it is the second or subsequent offense that is punished, not the first.”
See McDonald v. Massachusetts, 180 U. S., 311, and Carlesi v. New York, 233 U. S., 51.
The amended statute under consideration here did not have an unconstitutional operation as to the petitioner. It was not an ex post facto or retroactive law as to him. The court, under this statute, was authorized to impose a prison sentence.
It is the further claim of the petitioner that he should have had a definite sentence for a term of not less than one year nor more than five years, but the court, acting under Section 7388-6, Revised Statutes, imposed an indeterminate sentence. This, the petitioner contends, was without authority for the reason that Section 7388-6 was repealed and was not in existence at the time the sentence was imposed. Even if this be not true, it is urged that the indeterminate-sentence law was unconstitutional, being violative of Section 11 of Article III of the Constitution of Ohio, which vests the pardoning power in the governor, etc., and of Section 1 of Article IV, which vests the judicial power of the state in the courts. Whether the section was repealed or whether it was unconstitutional if not repealed, is unimportant, and it is wholly unnecessary to pass upon these questions in deciding this case.
*325 This is a proceeding in habeas corpus. A person unlawfully restrained of his liberty may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment, but Section 12165, General Code, reads: “If it appears that the person alleged to have been restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ shall not be allowed; or, if the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order.”
The trial court in the instant case had jurisdiction of the person of the petitioner. It had jurisdiction to try him for the offense charged and to sentence him to a term in the penitentiary under Section 12672. Instead there was an indeterminate sentence imposed of which the petitioner complains. If this were erroneous, the error committed by the court related to the sentence and punishment only and was not a jurisdictional one. The court merely entered and enforced a wrong judgment. Admitting then, for the purpose of this case, that there was no authority to impose the sentence, either by reason of the repeal of the indeterminate-sentence law or its unconstitutionality, the punishment inflicted was erroneous and voidable but not void. The sentence and punishment could have been corrected in a proceeding in error *326 challenging the judgment of the court. The petitioner had ample opportunity to avail himself of the objections as to the sentence which he attempts to make here. A habeas corpus proceeding cannot perform the functions of a writ of error.
Judge Swan, in Ex parte Shaw, 7 Ohio St., 81, says: “The writ of error and habeas corpus have each their separate offices. There are ample remedies provided for the correction of irregularities and errors in proceedings which result in conviction and in sentences, by writ of error. For errors and irregularities in such cases, the summary remedy by habeas corpus cannot be had.”
In Ex parte Van Hagan, 25 Ohio St., 426, the petitioner had been sentenced under a statute not in force, although another statute covered the offense. The punishment inflicted was an imprisonment for a term longer than that authorized by the then existing statute. It was held: “Habeas corpus is not the proper mode of redress, where the relator has been convicted of a criminal offense, and sentenced to imprisonment therefor * * *; if errors or. irregularities have occurred in the proceedings or sentence, a writ of error is the proper remedy.” The court in that case say: “The punishment inflicted by the sentence, in excess of that prescribed by the law in force, was erroneous and voidable, but not absolutely void. It follows that a writ of error to reverse the proceedings or sentence is the remedy that the relator should have resorted to in order to obtain a discharge from illegal imprisonment, and not habeas corpus, which *327 is not the proper mode of redress where the relator was convicted of a criminal offense and erroneously sentenced to excessive imprisonment therefor by a court of competent jurisdiction.” In re Lincoln, 202 U. S, 178; In re Bishop, 172 Mass, 35; In re Stalker, 167 Mass, 11; Ex parte Spencer, 228 U. S, 652.
The fact that the minimum term of imprisonment for which petitioner could have been sentenced under Section 12672 has expired does not affect the rule. In re Schuster, 82 Wis, 610, 52 N. W. Rep, 757; In re Shinski, 125 Wis, 280, 104 N. W. Rep, 86.
For the reasons we have given there was authority to impose a penitentiary sentence on the petitioner. If the indeterminate-sentence law was inapplicable for any reason and the sentence was not in accordance with the provisions of Section 12672, those questions could have been presented in an error proceeding. Carey v. State, 70 Ohio St, 121. They cannot be raised here and the errors complained of reviewed upon habeas corpus.
The prayer of the petitioner is therefore denied and the writ refused.

Writ refused'.

Nichols, C. J, Johnson, Donahue, Wanamaker, Jones and Matthias, JJ, concur.